# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### Civil Action No.

|  |  |
|---|---|
| **HANNAH JANE LLOYD,** | |
| **Plaintiff,** | **COMPLAINT** |
| **vs.** | **WITH DEMAND FOR JURY TRIAL** |
| **HIGHLANDS RESIDENTIAL MORTGAGE, LTD,** | |
| **Defendant.** | |

**NOW COMES** Plaintiff, Hannah Jane Lloyd, by and through Counsel, pursuant to North Carolina's Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §75.1.1), the North Carolina Debt Collection Act (N.C. Gen. Stat. §75-50), *et seq*, and North Carolina common law, and respectfully submits to this Court the following:

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the Defendant is a foreign corporation and the amount in controversy is more than $75,000.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because the events which gave rise to the claims herein occurred within this judicial district.

3. This case is brought within four years of the alleged violations N.C. Gen. Stat. §§ 75-1.1 and 75-50, *et seq*., in compliance with N.C. Gen. Stat. § 75-16.2, and within three years of the alleged negligence in compliance with N.C. Gen. Stat. 1-52(5).

## PARTIES

4. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

5. Hannah Jane Lloyd ("Ms. Lloyd") is a citizen and resident of Mecklenburg County, North Carolina.

6. Ms. Lloyd is a "consumer" pursuant to N.C. Gen. Stat. § 75-50(1) because she is a natural person and she incurred a incurred a mortgage loan from the Defendant for personal, family, and household purposes.

7. The debt in this matter is a "debt" pursuant to N.C. Gen. Stat. § 75-50(2) because it is alleged to be owed from the Plaintiff.

8. Highlands Residential Mortgage, Ltd., ("Highlands") engaged in commerce in Mecklenburg County, North Carolina, during all times relevant to this complaint.

9. Highlands operates as a lender/broker providing residential mortgages to borrowers in North Carolina and throughout the United States.

10. Highlands principal place of business is located at 950 W. Bethany Drive, Suite 800, Allen, Texas 75013.

11. Highlands national mortgage/lender broker license number under the Nationwide Multistate Licensing is NMLS ID 134871.

12. Highlands is licensed as a lender, broker and servicer of mortgage loans.

13. Highlands mortgage lender/broker license number in North Carolina is L-157614.

14. Highlands transacts or has transacted business in North Carolina and throughout the United States.

15. Highlands is in the business of providing lending and other financial services to consumers and conducts business in Mecklenburg County, North Carolina.

16. Highlands is "engaged in the mortgage business" pursuant to N.C. Gen. Stat. §53-244.030(11)(21), "For direct or indirect compensation or gain, or in the expectation of

compensation or gain, either directly or indirectly, to accept or offer to accept an application for a residential mortgage loan from prospective borrowers: takes a residential mortgage loan application or offers or negotiates terms of a residential mortgage loan." *Id*. Highlands engaged in each of these activities as alleged *infra*.

17. Highlands is a "debt collector" pursuant to N.C. Gen. Stat. § 75-50(3) because it was and is a person who engaged, directly from the Plaintiff.

18. At all times relevant to the subject matter of this Complaint Highlands business activities as described herein were in and affected commerce, pursuant to N.C. Gen. Stat §§ 75-1.1 (b).

## FACTUAL ALLEGATIONS

19. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

20. The parties entered into an agreement on February 11, 2021, for Ms. Lloyd to borrow $307,800.00 from Highlands for the purchase of a home ("Property") located at 1125 Park West Drive, Charlotte, North Carolina 28209.

21. The property is Ms. Lloyd's principal residence.

22. The loan was evidenced by a promissory note and secured by a Deed of Trust.

23. On or around April 20, 2022, Ashleigh Clark, Senior Loan Officer with Highlands sent an email to Ms. Lloyd and her mother, Mary Baldwin Morris, stating that "Highlands pulls files for random audits to verify accuracy of the details used in borrower qualifying and a couple questions recently came up on Hannah Jane's file." (Exhibit 1)

24. On or around April 25, 2022, in response to emails sent to Ms. Lloyd's mother, Mary Baldwin Morris, sent an email stating that Ms. Lloyd owned a 25% interest in the company HCM, LLC (N.C. SoS ID. No 1230168) ("HCM"). (Exhibit 1)

25. Ms. Morris was mistaken.

26. Ms. Morris stated in the April 25, 2022 email to Highlands that they were going through a "learning curve on our end."

27. Ms. Lloyd owned a 1% interest in HCM.

28. Highlands began sending emails requesting either Ms. Morris or Ms. Lloyd provide her K1's for the years 2019 and 2020 along with complete business tax returns with all schedules and attachments. (Exhibit 1)

29. Ms. Lloyd sent an email in response on May 9, 2022, attaching copies of her W2's which she had previously provided to Highlands.

30. On May 15, 2022, Ms. Morris sent an email discussing that HCM's CPA, Walker Miller, had also confirmed there are no K-1s. (Exhibit 2)

31. Highlands would not stop its relentless pursuit of K-1's that did not exist.

32. In or around September 2023, Highlands sent notice to Ms. Lloyd of its intent to call the note on her mortgage loan.

33. Highlands alleged it was "calling the loan due" or "accelerating the note" because Ms. Lloyd "intentionally omitted material information from Highlands during the loan application process." (Exhibit 3)

34. Despite having copies of an Amended Operating Agreement dated December 6, 2012, showing that Hannah Jane Lloyd owned a 1% interest in HCM, Highlands moved forward with acceleration of the note based on the email it had received from Ms. Lloyd's mother.

35. Highlands alleged that Ms. Lloyd, when completing her mortgage loan application, misrepresented her employment and ownership status in a company which Ms. Lloyd owned only 1%.

36. HCM is a limited liability company Ms. Lloyd's mother formed under the laws of North Carolina on or around November 15, 2011.

37. Ms. Lloyd, in her mortgage application, identified herself as an employee rather than an owner of the company. (Exhibit 5)

38. Ms. Lloyd's assertion was accurate and consistent with all the documents submitted to Highlands, including her W2 filings.

39. On December 6, 2012, nine years before Ms. Lloyd sought a mortgage loan from Highlands, HCM sent an Amended Operating Agreement along with an Assignment of Interest to the North Carolina Secretary of State for filing.

40. The North Carolina Secretary of State sent the documents back stating that these particular documents do not need to be filed but still serves as proof that Ms. Lloyd's 1% interest in the limited liability company dates back nine years.

41. The Internal Revenue Service guidelines suggest holding a 1% ownership stake does not automatically confer "ownership" status for certain tax purposes, such as filing K1 forms.

42. Ms. Lloyd properly disclosed that she was an employee of HCM to Highlands during the mortgage loan application process.

43. Highlands repeatedly asked Ms. Lloyd for copies of her K1 forms, and Ms. Lloyd told Highlands those K1 forms did not exist.

44. Ms. Lloyd has always been considered an employee of HCM. Each year Ms. Lloyd, files W2 forms, not K1s, reflecting her status as an employee.

45. Prior to closing on the loan, Ms. Lloyd provided Highlands with W2 forms and a letter on HCM's letterhead that was addressed to Tiandra Tuft, a loan processor with Highlands.

46. The letter stated Ms. Lloyd's membership status in the LLC.

47. Despite this, Highlands called the mortgage due (demanded payment in full), accused Ms. Lloyd of misrepresentation, and asserted that "the borrower's application was inaccurate regarding her ownership status."

48. Highlands initiated foreclosure and forced Ms. Lloyd to pay off her mortgage at higher costs and a higher interest rate to save her home.

49. Prior to calling the note due, Highlands hired a real estate appraiser without giving any notice to Ms. Lloyd.

50. Highlands requested the appraiser contact Ms. Lloyd and obtain permission to appraise her condo.

51. Ms. Lloyd owned and had been living in her condo for over a year at this point in time.

52. Ms. Lloyd concerned sent an email on October 12, 2022, to Ashleigh Clark at Highlands stating, "Allen James, a real estate appraiser from The Appraisal Group called wanting to appraise her property." (Exhibit 4)

53. Ms. Clark responded that Highlands had asked him to appraise her condo. (Exhibit 4).

54. Ms. Lloyd wrote, "Does this seem legit to you?" (Exhibit 4)

55. On October 12, 2022, Ms. Clark responded, "I don't know since I'm only on the originating side of things with Highlands. If you supplied the tax returns, then I have really no idea why an appraisal would be requested," (Exhibit 4)

56. On October 12, 2022, Ms. Clark sent a second email stating that Ryan Boner, AVP Mortgage Operations, said that the appraisal request was valid and asked Ms. Lloyd to please cooperate.

57. Ms. Clark additionally included Mr. Boner's response, "My apologies, I thought QC reached out to you. Yes, this is valid as they are trying to order an updated appraisal to show the LTV

is now below 80% as the MI company is requesting the policy be cancelled since we couldn't remedy their findings and provide additional tax information." (Exhibit 4)

58. On or around September 13, 2023, counsel for Highlands sent Ms. Lloyd a Notice of Default and Intent to Accelerate letter. (Exhibit 3)

59. The letter stated that Highlands was calling the note because "it was discovered that you intentionally omitted material information from Lender during the loan application process. More specifically on February 11, 2021, you knowingly omitted from your Uniform Residential Loan Application that you were actually self-employed (*i.e.*, you and another family member owned the limited liability company that you identified as your employer.)" (Exhibit 3)

60. From an IRS perspective, a person who owns less than 25% of a company is treated as an employee rather than self-employed.

61. Despite Ms. Lloyd providing copies of HCM's relevant documents along with W2 and tax returns proving that she only owned a 1% interest in HCM, Highlands chose to move forward with foreclosure alleging that Ms. Lloyd was a 25% owner of the limited liability company and not an employee.

62. Munck Wilson Mandala, counsel for Highlands, sent a Notice of Default and Intent to Accelerate letter via certified mail to Ms. Lloyd on September 13, 2023. (Exhibit 3)

63. The letter requested that Ms. Lloyd provide sufficient documentary proof to Highlands that she was not self-employed on February 11, 2021, by October 13, 2023.

64. The letter further stated that failure by Ms. Lloyd to provide sufficient proof that she was not self-employed would result in Highlands accelerating the balance of the loan now due and owing or foreclosure proceedings would begin. (Exhibit 3)

65. Ms. Lloyd provided substantial proof to Highlands that she was not self-employed.

66. Highlands, as originator of Ms. Lloyd's mortgage, owed Ms. Lloyd a duty of care outside the law of contracts.

67. Pursuant to N.C. Gen. Stat. §53-244.110(3), Highlands has a duty under North Carolina law to act with reasonable skill, care, and diligence in the origination of Mr. Jones's loan.

68. Ms. Lloyd has been irreparably harmed because of Highland's errors and general mishandling of her mortgage loan.

69. As a result of Highlands' conduct, Ms. Lloyd has suffered physical, emotional and mental pain and anguish, and she will continue to suffer the same for an indefinite time in the future, all to her detriment and loss.

70. As a result of Highlands' conduct, Ms. Lloyd has suffered actual damages in the form of financial and dignitary harm and emotional distress, and Ms. Lloyd will continue to suffer the same for an indefinite time in the future, all to her detriment and loss. Examples of these damages include, but are not limited to:

   a) higher interest rate on new loan

   b) higher interest loan payment and unfavorable terms

   c) tax penalties

   d) embarrassment, humiliation and emotional distress

71. At all times pertinent hereto, Highlands was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Highlands.

72. At all times pertinent hereto, the conduct of Highlands, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for North Carolina laws and the rights of Ms. Lloyd as alleged herein.

**FIRST CAUSE OF ACTION**
**Unfair and Deceptive Trade Practices Act**
**N.C.G.S. §75.1.1**

73. The allegations set forth in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

74. The Defendants have engaged in unfair and deceptive conduct by accepting and reviewing all of the corporate documents related to HCM along with the tax documents Ms. Lloyd's provided, then call the note without new and compelling evidence other than an email from Ms. Lloyd's mother.

75. It was unfair and deceptive for Highlands to not have reasonably verified the authenticity beforehand.

76. It was unfair and deceptive for Highlands to not have reasonably verified Ms. Lloyd's employment status to their satisfaction during due diligence conducted as part of the underwriting process.

77. Given that Ms. Lloyd accurately identified herself as being fully employed by HCM, and this information was verified by Highlands during the underwriting process, calling the note due to a perceived employment change is deceptive.

78. Highlands unfairly classifying Ms. Lloyd as being self-employed when she is not and subsequently calling the note due based on Highlands erroneous classification is deceptive.

79. Highlands unfairly and deceptively accelerated Ms. Lloyd's note so it could improperly profit from the sale of the home.

80. By Highlands' conduct as alleged herein, it has engaged in unlawful business acts or practices in violation of N.C. Gen. Stat. §75-1.1.

81. By Highlands' conduct as alleged herein, it has engaged in unfair business acts or practices in violation of N.C. Gen. Stat. §75-1.1.

82. By Highlands' conduct as alleged herein, it had engaged in deceptive business acts or practices in violation of N.C. Gen. Stat. §75-1.1

83. Highlands' unlawful conduct has proximately caused injury to Ms. Lloyd.

84. Ms. Lloyd has been damaged by Highlands' imposition of costs and fees associated with the institution of foreclosure proceedings, attorney fees, all of which could have been avoided if Highlands had properly conducted due diligence.

85. Highlands' acts and omissions as alleged in the First Cause of Action have proximately caused economic injury to Ms. Loyd; were in and affecting commerce; had the capacity to deceive and did deceive an ordinary consumer; were unscrupulous, immoral, oppressive and constituted unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1, thereby entitling Ms. Loyd to the relief requested in this Complaint.

86. The injuries suffered by Ms. Lloyd are attended by circumstances of fraud, malice, and/or will and wanton misconduct, calling for statutory damages of the actual damages plus treble damages pursuant to N.C. Gen. Stat. § 75-16 as well as attorneys' fees and costs pursuant to N.C. Gen. Stat. § 75-16.1

### SECOND CAUSE OF ACTION
**Negligence**

87. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

88. Highlands was negligent in the origination of Ms. Lloyd's mortgage loan.

89. Highlands operates as a licensed originator, lender and mortgage broker in North Carolina.

90. N.C. Gen. Stat. §53-244.105 lists the duties required of a "mortgage originator engaged in the mortgage business."

91. N.C. Gen. Stat. § 53-244.106, outlines prohibited practices for mortgage loan originators in North Carolina.

92. Ms. Lloyd acknowledges that she does not have a private right of action under the North Carolina Secure and Fair Enforcement (S.A.F.E.) Mortgage Licensing Act, N. C. Gen. Stat. § 53-244.010, *et seq*.

93. However, for Highlands to do business in North Carolina as a mortgage lender and originator, it volunteered and agreed as a condition of its license to abide by the provisions of North Carolina SAFE Act.

94. The North Carolina Court of Appeals held in *Guyton v. FM Lending Servs., Inc*., 199 N.C. App 30, 681 S.E.2d 465 (2009) that North Carolina's Mortgage Lending Act, the predecessor statute to the SAFE Act, could serve as the source of legal duty owed by a lender to a borrower for purposes of a negligence claim.

95. Highlands is a mortgage "broker," a mortgage "lender," and a mortgage "loan originator" in North Carolina as that term is defined pursuant to the North Carolina SAFE Act § 53-244.030 (19), § 53-244.030 (20) and § 53-244.030 (21).

96. N.C. Gen. Stat. §53-244.110(3) provides that Highlands have a duty under North Carolina law to act with reasonable skill, care, and diligence in the servicing of Ms. Lloyd's loan.

97. Highlands has acted negligently in servicing Ms. Lloyd's loan by foreclosing on her home without providing her with the proper notices after receipt of a "complete" loss mitigation

application as outlined in 12 C.F.R. 1024.41.

98. Highlands breached its duties of reasonable skill, care, and diligence in the origination of Ms. Lloyd's loan.

99. Highlands' actions are the proximate cause of Ms. Lloyd's injuries and Highlands should have foreseen that Mr. Lloyd's injuries were probable under the circumstances.

100. Ms. Lloyd has suffered damages as a proximate result of the negligent acts and omissions of Highlands as described in this Complaint, and she requests the Court for judgment in favor of herself and against the Defendants for their negligence in the sum of her actual damages (the costs of refinancing her home), court costs and attorney's fees incurred by Ms. Lloyd.

### THIRD CAUSE OF ACTION
**North Carolina Debt Collection Act N.C. Gen. Stat. § 75-50 *et seq***

101. The allegations set forth in the preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

102. Highlands violated North Carolina law which prohibits a debt collector from "threatening to take any action not permitted by law" (N.C. Gen. Stat. § 75-51(8)), when it threatened to accelerate or foreclose on Ms. Lloyd's loan when it had no legal right to do so.

103. Highlands violated North Carolina law which prohibits a debt collector from "falsely representing the character, extent, or amount of a debt against a consumer or its status in any legal proceeding" (N.C. Gen. Stat. § 75-54(4)), when it represented that Ms. Lloyd had misstated her ownership interest in HCM when she applied for a mortgage loan with Highlands.

104. Highlands violated North Carolina law when it collected "a debt by use of any unconscionable means" (N.C. Gen. Stat. §75-55) when it accelerated Ms. Lloyd's note when it had no legal right to.

105. Highlands, in violation of N.C. Gen. Stat. §75-54, has falsely and by fraudulent, deceptive or misleading representations, led Ms. Lloyd to believe she was not qualified for a mortgage loan when she had already been approved and was making payments on the mortgage.

106. The Defendants' actions described above have proximately caused humiliation, embarrassment, emotional and financial distress, and other mental suffering to Ms. Lloyd.

107. As a result of the Defendants' violations of the North Carolina Debt Collection Act, Ms. Lloyd is entitled to actual damages and civil penalties in an amount not less than $500.00 but no greater than $4,000.00 per violation pursuant to N.C. Gen. Stat. §75-56; and reasonable attorney's fees and costs pursuant to N.C. Gen. Stat. §75-16.

## DEMAND FOR JURY TRIAL

108. Plaintiff exercises the right to a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully request the following relief from this Court:

1. A trial by jury to all issues so triable;

2. Actual damages and compensatory damages for negligence;

3. Punitive damages pursuant to N.C. Gen. Stat. § 1D;

4. Costs as may be allowable by North Carolina law, including pre-judgment, and post-judgment interest from the Defendant;

5. Actual and treble damages pursuant to N.C. Gen. Stat. § 75-16;

6. Costs and reasonable attorney fees pursuant to N.C. Gen. Stat. §75-16.1;

7. Weekly damages for all continuous violations of N.C. Gen. Stat. § 75, pursuant to N.C. Gen. Stat. § 75-8;

8. Actual damages to be determined at trial and statutory damages of $4,000 per violation as allowed pursuant to N. C. Gen. Stat. § 75-56 (b); and,

9. Such other and further relief as to the Court may seem just, equitable and proper.

Respectfully submitted this the 8th day of December 2025.

**WILLIAMS & PERRY, PLLC**

***/s/ Stacy L. Williams***
Stacy L. Williams
NC State Bar No.: 26874
109 West Statesville Avenue
Mooresville, NC 28115
Telephone: (704) 663-4187
Email: stacy@williamsperry.com
*Attorney for Plaintiff*